[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION CT Page 1643
This is a suit for dissolution of marriage brought by the plaintiff wife against the defendant husband. The parties were married on July 6, 1985 in Fairfield, Connecticut. There are two children issue of the marriage, Lauren born February 11, 1987 and Allison Marie born June 12, 1990. This action was commenced on June 5, 1992. The defendant moved out of the family home on June 14, 1992, two days after Father's Day.
Each of the parties are 32 years of age. Each of the parties are in "very good health." The plaintiff wears contact lens. Because of an "eye condition", she has to wear hard lens rather than soft ones. The "eye condition" necessitates a visit to the ophthalmologist every six months. While plaintiff's counsel has addressed this issue in her trial memorandum, she has overstated the evidence, the evidence of the parties supporting only that that is set forth herein.
The plaintiff has an associate's degree from Katherine Gibbs and some course work at Sacred Heart University in business administration. She is eight courses from completing her bachelor's degree. She anticipates finishing by attending evening classes.
The defendant graduated from Fairfield University with his bachelor's degree majoring in Psychology. He attended one semester at Georgetown University leading to a degree in Applied Psychology. He decided at that time that that seemed pointless when all of his life he had worked to be a restaurant proprietor. He left Georgetown and attended the Culinary School in Washington, D.C. for one year and received his Certificate of Catering Arts. He then worked in various Washington restaurants to gain experience and eventually went to work with his father in La Shack Restaurant in Cos Cob. He is presently working at La Provence Restaurant in South Norwalk where he works as a waiter, part time floor manager and chef.
The plaintiff has worked part time as a secretary and grocery store cashier while going to school. The past ten years she has worked for Playtex in the Personnel Department. She commutes from the family home in Fairfield to her job in Stamford. CT Page 1644
At the time of their marriage each party had $20,000.00 and the plaintiff owned shares of stock in Connecticut Energy Corporation. After the marriage, this was put in joint names and dividends were reinvested to purchase more shares. In 1991 some shares of Connecticut Energy were sold to purchase United States Surgical stock. After the separation, the defendant unilaterally sold one half of the United States Surgical stock, but on the plaintiff's instructions, those proceeds are being held in a Merrill Lynch money market fund until further instructions from the parties.
Neither party has raised any question of the accuracy of the parties' financial affidavits relating to income. The plaintiff receives a salary at Playtex and earns a gross pay of $557.00 per week and has a net weekly pay of $422.00. She anticipates that she will advance within the company. The defendant, over the past eleven weeks, has averaged a gross weekly pay and tips of $847.00 and weekly net earnings of $589.00. He is very desirous of opening his own restaurant at some point in time.
The plaintiff has a pension plan at Playtex valued in her financial affidavit at $31,054. This plan has been contributed to entirely by Playtex. The defendant has two IRA accounts totaling $6,900.00. Except for the marital home and the assets hereinbefore mentioned and the parties' automobiles, the other assets of the parties total no more than $8,500.00.
The parties are agreed on the issue of custody of the children. Both parties believe that it is in the best interests of the children that there be joint, legal custody with primary physical custody to be with the plaintiff. The parties have agreed, also, that the defendant should have liberal access and visitation rights with his children at all reasonable times. Since the commencement of this action and the parties' separation, the parties have been successful in arranging a visitation schedule appropriate to the defendant's schedule. It is hoped and expected that they will continue to do so and to communicate with one another in the best interests of the children.
One of the disputes between the parties concerns the disposition of the real property as to time, that is, now or some later date, and a division of the net proceeds of sale. CT Page 1645 The marital house was appraised for an equity loan for home improvements one and a half years ago for $262,000.00. The renovation of the laundry area and family room cost $18,000.00. On that basis, the plaintiff has valued the family home at $280,000.00. The defendant has valued the family home at $260,000.00. The first mortgage and equity loan amount to $160,000.00. The net equity, therefore, is between $100,000.00 and $120,000.00.
Each of the parties have worked during all of the marriage except for one short period of time when the defendant was out of work. On the purchase of their first home, a town house in Stamford, each contributed $20,000.00 to the down payment. In 1987 the parties purchased the home in Fairfield for $249,900.00, $100,000.00 of that purchase price represented the net monies received by the parties upon the sale of the Stamford Town House. While the defendant's contribution to the appreciation and preservation of the parties' assets may be greater due to his higher earnings, the plaintiff has contributed more to the care of the household and raising of the children. The court considers, then, that their contribution has been substantially equal.
Another area of disagreement is the division of the remaining assets of the parties. The plaintiff claims her pension, one half of the defendant's IRA at Vanguard since it was acquired with joint funds plus the United States Surgical and Connecticut Energy stock, since the United States Surgical was bought with the proceeds of sale of some of the Connecticut Energy stock and the Connecticut Energy stock was hers before the marriage. The plaintiff seeks the house, the defendant to receive a promissory note for 25 per cent of the net equity, due and payable when the younger daughter reaches the age of 18 years or graduates from high school, whichever is later. defendant seeks an order that the marital home be sold now and the net equity equally divided.
The plaintiff has presented a child support guideline work sheet. In the calculation of the tentative obligation of each of the parties, she has deducted an amount for day care costs of $60.00. This same figure is shown as an expense in her financial affidavit. At the present time, however, the two sets of grandparents of the children are providing day care without cost. The deduction of this amount at this time is inappropriate. It is the current income and current expenses of CT Page 1646 the parties which must be considered by the court at this time.
Finally, the issue of fault in this case has been aggressively litigated. It is admitted by the defendant that he did have an extramarital affair in January and February, 1992. The issue between the parties is whether the affair was before or after the breakdown of the marriage. Beside the testimony of the parties on this issue, there has been the testimony of the "other woman" and the testimony of two of the defendant's friends. While it is true that the defendant was still living at home when the extramarital affair occurred, the court finds that it did occur after the breakdown of the marriage. While the breakdown undoubtedly occurred because of the stressful situation in which the parties found themselves, the court finds that if fault is to be charged, the breakdown is really the fault of both of the parties. For the sake of the parties and others present during the course of these proceedings, it serves no useful purpose to discuss this issue in any greater detail.
In determining the proper orders in this case the court must consider the factors set forth in 46b-81 and 46b-82
and 46b-84 of the General Statutes together with the provisions of 46b-62 and the Child Support Guidelines. With respect to alimony, support and a division of the property of the parties, the law to be considered has been stated as follows:
 To begin with, our alimony statute does not recognize an absolute right to alimony, General Statutes 46b-82; Thomas v. Thomas, 159 Conn. 477, 487, 271 A.2d 42 (1970); `This court has reiterated time and again that awards of financial settlement ancillary to a marital dissolution rest in the sound discretion of the trial court.' (Citation omitted.) Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets and opportunity for future acquisition of assets of each of the parties, (citation omitted), no single criterion is preferred over all the others. In weighing the factors in a given case, the court is not required to give equal weight CT Page 1647 to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight. Valente v. Valente, 180 Conn. 528, 530
(1980); Watson v. Watson, 221 Conn. 698, 710
(1992).
In the recent case of Blake v. Blake, 207 Conn. 217 at 230 (1988), our Supreme Court cited with approval the language of O'Neill v. O'Neill, 13 Conn. App. 300 at 311 (1988), in which our Appellate Court stated as follows:
 A property division ought to accord value to those nonmonetary contributions of one spouse which enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets. The investment of human capital in homemaking has worth and should be evaluated in a property division incident to a dissolution of marriage. We hold, accordingly, that an equitable distribution of property should take into consideration the plaintiff's contributions to the marriage, including homemaking activities and primary caretaking responsibilities.
As has been said by the Appellate Court in the recent case of Emanuelson v. Emanuelson, 26 Conn. App. 527, 530, 531
(1992):
 "General Statutes 46b-81(c) requires the trial court to evaluate certain factors before distributing the parties' assets in a marital dissolution action. Although the court must evaluate all the factors listed, it has broad discretion when applying the statutory factors to assign the parties' assets. O'Neill v. O'Neill, 13 Conn. App. 300, 312, 536 A.2d 978, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988). . . . CT Page 1648
 The statutory factors for determining alimony in 46b-82 are almost identical to the factors used to distribute property in 46b-81(c)."
The court has considered all of the criteria of46b-81, 46b-82, 46b-84 and 46b-62 of the General Statutes together with the Family Support Guidelines in accordance with46b-215b and all of the evidence and the case law. Since "[i]t would serve no useful purpose to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v. Scherr, 183 Conn. 366, 368
(1981), this court will not recount those statutory criteria and the evidence, other than as has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman, 188 Conn. 232, 234
(1982).
Suffice to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding, Leo v. Leo, 197 Conn. 1, 5
(1985), and that the court need not give equal weight to each factor. Kane v. Parry, 24 Conn. App. 307, 313-14 (1991).
The court, in addition to the findings noted herein, finds as follows:
1. There is the requisite jurisdiction.
 2. The allegations of the complaint have been proved and are true.
3. There has been an irretrievable breakdown of the marriage.
The court enters the following orders:
 1. A decree of dissolution of marriage shall enter on the grounds of irretrievable breakdown of the marriage.
 2. The plaintiff and the defendant shall have joint, legal custody of the minor children with physical custody to be with the plaintiff. The defendant shall have broad and liberal rights of visitation upon reasonable notice. The defendant shall have reasonable telephone access to the minor children or either of them. The plaintiff shall keep CT Page 1649 the defendant informed at all times of the children's whereabouts. The defendant, also, when he has the children with him, shall keep the plaintiff informed of the children's whereabouts and permit the plaintiff to have reasonable telephone access to the children.
 3. Commencing March 1, 1993, the defendant shall pay to the plaintiff the sum of $288.50 per week ($15,000.00 per year) by way of unallocated alimony and support, terminable upon the earliest to occur of the following events: the death of either of the parties, the plaintiff's remarriage, the death or change of residency with someone other than the plaintiff of either of the children, or ten years from the date hereof. Upon the happening of any of the above, the parties shall return to court for further orders. For so long as the order for unallocated alimony and support remains in effect, the plaintiff shall have the income tax exemptions for the minor children. Unless the parties file a written waiver of the provision of 52-362 of the General Statute, there shall be an immediate order for wage withholding to secure the orders for unallocated alimony and support.
 4. The defendant shall pay as additional support one half the cost of child care for the children, for that care necessitated by reason of the plaintiff's employment outside the home. This shall not be by way of unallocated alimony and child support but shall be in addition to the provisions of paragraph 3 hereof.
 5. The defendant shall pay the February mortgage payment. The plaintiff shall pay the February equity loan payment.
 6. The real property at 59 Berkeley Road in Fairfield shall be placed immediately upon the market for sale. The parties shall agree upon a listing broker and the listing price for the property. In the event the parties are unable to agree upon a listing price, the plaintiff shall select an appraiser of her choice, the defendant shall select an appraiser of his choice, and the two appraisers shall agree. In the event the two appraisers are unable to agree, the two appraisers shall select a third appraiser and the listing price shall be the average of the three appraisals. Any cost or expense connected with the appraisal process shall be shared equally by the parties. CT Page 1650
Any offer within five (5%) per cent of the listing price shall be accepted by the parties. This court shall retain jurisdiction in the event there is any disagreement between the parties regarding the terms and conditions of the sale.
After the payment of any brokerage commission, the usual closing adjustments, conveyance taxes, reasonable attorney's fees for representation upon the sale, the first mortgage, the equity loan (Commercial Credit Corporation), the Marine Midland liability for the balance of the basement carpet, and the debt to Alex . Prion ($3,200.00), the remaining proceeds of sale shall be divided sixty (60%) per cent to the plaintiff and forty (40%) per cent to the defendant.
Until the property is sold, the plaintiff shall be responsible for payment of the first mortgage, the Commercial Credit Corporation loan, the real property taxes, homeowner's insurance and ordinary household repairs. Any single repair in excess of $100.00 shall be shared equally by the parties. In the event any fix-up repairs are required in connection with the sale of the property, they shall be borne sixty (60%) percent by the plaintiff and forty (40%) percent by the defendant.
 7. The defendant shall assign all of his interest in the stock of Connecticut Energy Corporation and United States Surgical Company together with the money market fund at Merrill Lynch to the plaintiff so that the stock and the money market fund shall be wholly hers free of any claim or demand by the defendant.
 8. The IRA accounts, Vanguard Windsor II and Merrill Lynch Fund for Tomorrow shall be the defendant's free of any claim or demand by the plaintiff. The plaintiff's Playtex Retirement Plan shall be wholly hers free of any claim or demand by the defendant. The People's Bank checking account and savings account listed on the plaintiff's financial affidavit shall he hers free of any claim or demand by the defendant. The Fleet Bank checking account listed on the defendant's financial affidavit shall be his free of any claim or demand by the plaintiff.
9. The 1992 Nissan Stanza shall be the property of the CT Page 1651 defendant. He shall be wholly responsible for the outstanding loan thereon and shall indemnify and hold harmless the plaintiff from any claim or demand therefore. The 1990 Ford Taurus shall be the property of the plaintiff. The parties shall execute the necessary transfer papers to accomplish this.
 10. The plaintiff shall maintain such medical and hospital insurance as she has available through her employment for the benefit of the minor children. Any uninsured or unreimbursed medical or dental expenses that may be incurred for the minor children shall be shared equally by the parties. In the event the defendant should subsequently be entitled through any future employment to medical and hospital insurance covering the minor children without any extra cost or at a minimum of extra cost, he shall maintain the same for the minor children.
 11. The plaintiff shall cooperate with the defendant so that he may obtain, at his option, continuation of his existing hospital and medical insurance coverage under the plaintiff's coverage through her employment pursuant to the provisions of 38a-538 of the General Statutes. Such continued coverage, should the defendant elect the same, shall be at his expense.
 12. The defendant shall maintain life insurance on his life in the face amount of $250,000.00, loan free, naming the children as irrevocable equal beneficiaries thereof for so long as he is obligated to pay support. The defendant shall furnish the plaintiff proof of such coverage and proof of the designation of beneficiaries annually to the plaintiff on January 15 of each year.
 13. The plaintiff shall be responsible for her debt to People's Mastercard. The defendant shall be responsible for his indebtedness on his credit cards (approximately $1,000.00) and to Household Credit. Each party shall indemnify and hold harmless the other party from any claim or demand thereon.
 14. The video camera shall be the property of the defendant. Video tapes of the family shall be copied so that each party may have any family video tapes she or he desires and other video tapes shall be divided as the parties may CT Page 1652 agree. Cost of reproduction of family tapes shall be borne equally by the parties. Should the plaintiff desire the use of the video camera, its case and tripod, the defendant shall supply the same to the plaintiff. The camera, case and tripod shall be returned to the defendant after each use.
 15. The Belgian house collection, the wines and liquors, the collectibles listed on the defendant's financial affidavit and the coins shall be the property of the defendant free of any claim or demand by the plaintiff.
 16. The tangible personal property in the defendant's possession shall be his free of any claim or demand by the plaintiff. The tangible personal property in the possession of the plaintiff at 59 Berkeley Road in Fairfield shall be hers free of any claim or demand by the defendant except for the following items which shall be the property of the defendant: armchair from living room, sofa table from living room, two Stiffel lamps from the living room, end table and dresser from the master bedroom, together with the following items listed on defendant's exhibit two: Waterford vase, Tiffany decanter and picnic basket listed in attic inventory, crystal decanter, three silver platters and silver coffee service consisting of tray, sugar, creamer and coffee pot listed under linen closet inventory; three pictures of Quebec City, two Paris paintings, and the winter painting over the dresser in the bedroom.
 17. The china shall be divided as the parties shall agree. A set shall not be divided, but sets of china shall be divided. China given by the plaintiff's friends or family shall be hers. China given by the defendant's friends or family shall be his. China given by mutual friends or purchased by the parties during the marriage shall be divided by sets. Any miscellaneous china pieces purchased by the parties or given by mutual friends shall be divided equally.
18. Each party shall pay his or her own attorney's fees.
Orders shall enter in accordance with the foregoing.
EDGAR W. BASSICK, III, JUDGE CT Page 1653